UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
AJMEL A. QURESHI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0393

August 6, 2026

LETTER TO COUNSEL

**Re: *Richard W. v. Frank Bisignano, Commissioner, Social Security Administration,*
*Civil No. AAQ-25-02900***

Dear Counsel:

On September 3, 2025, Richard W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for disability insurance financial assistance under Title II of the Social Security Act and supplemental security income. ECF No. 1.  I have considered the parties' cross-motions for summary judgment.  ECF Nos. 12, 14.  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  *See* 42 U.S.C. § 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will grant the Commissioner's Motion, deny Plaintiff's Motion, affirm the SSA's decision, and close the case.  This letter explains my rationale.

## I.      The History of this Case

Plaintiff filed his claim for financial assistance on August 17, 2021, alleging a disability onset date of March 20, 2021.  ECF No. 8-3, at 18.  Plaintiff was issued an initial denial of disability insurance financial assistance and his subsequent Request for Reconsideration was likewise denied.  *Id.*  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* Following the hearing, which took place on May 17, 2024, the ALJ determined Plaintiff did not have a disability within the meaning of the Social Security Act during the relevant time frame.  *Id.* at 18, 31.  The Appeals Council denied Plaintiff's request for review, *id.* at 2, thus, the ALJ's decision constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ found that Plaintiff suffered from the severe impairments of "chronic obstructive pulmonary disease (COPD); asthma; obesity; loss of central visual acuity; schizoaffective disorder; affective disorders; and generalized anxiety disorder."  ECF No. 8-3, at 21.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with following additional limitations: The claimant cannot climb ladders, ropes, or scaffolds; can occasionally

*Richard W. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. AAQ-25-02900
August 6, 2026
Page: 2

> climb ramps or stairs; and can have no exposure to hazards. The claimant effectively has no useful vision on the right, monocular vision. He should avoid concentrated exposure to extreme temperatures, humidity, wetness, fumes, dusts, odors, gases, poor ventilation, and other pulmonary irritants. In addition, the claimant can have occasional interaction with coworkers and supervisor and no work-related interaction with the public; can maintain pace for simple nonproduction tasks (no assembly line work or work requiring meeting strict quotas or work where coworkers are side by side and the work of one affects the work of others); and can tolerate occasional changes to the routine work setting.

*Id.* at 23.

Specifically, regarding Plaintiff's ability to "maintain pace for simple nonproduction tasks", the ALJ explained her reasoning in various places. *Id.* Most significantly, she stated:

> With regard to the claimant's mental health impairments, I find that the claimant's schizoaffective disorders, affective disorders and generalized anxiety disorder, *warrant limiting the claimant to simple tasks in a routine work setting*, occasional interaction with supervisors and coworkers and no interaction with the general public. Despite his symptoms, including irritability and hallucinations, during exams, the claimant's cognitive functioning and memory were intact. He was cooperative and attentive without gross behavioral abnormalities. His speech was normal and his language skills intact. He was cooperative and attentive. Moreover, when he was compliant with his medication, his symptoms improved.

*Id.* at 27 (emphasis added).

Immediately thereafter, she provided further explanation regarding the impact – or lack thereof – of other evidence in the record concerning Plaintiff's "ability to concentrate, persist and maintain a pace, interact, and adapt." *Id.* The ALJ specifically rejected the nurse practitioner's conclusion that Plaintiff had marked limitations on these points, reasoning that her opinions "are not supported with any references to the record or explanation." *Id.* Additionally: "[the nurse practitioner's] opinions are not consistent with the overall record of the claimant's mental health impairments, in particular, his unremarkable mental status exams, during which he was cooperative, had normal speech, an intact memory, normal attention, a normal thought process and normal thought content." *Id.*

2

*Richard W. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. AAQ-25-02900
August 6, 2026
Page: 3

Finally, and for similar reasons, the ALJ discounted the opinion of a doctor who provided a psychological examination of the Plaintiff and concluded that Plaintiff would be "limited for a long time." *Id.* (internal quotation marks omitted). According to the ALJ, the doctor's "opinion is supported by an examination and generally consistent with the evidence indicating that limitations are warranted with regard to the claimant's mental health impairments. Nonetheless, it provides very little instruction regarding the formulation of a residual functional capacity." *Id.*

Applying the RFC above, including the limitation on pace, the ALJ determined that Plaintiff could perform work as a linen room attendant, routing clerk, router, marker, and collator operator. *Id.* at 30-31. Therefore, the ALJ determined that Plaintiff did not have a disability. *Id.* at 31.

## II.    Plaintiff's Argument on Appeal

Plaintiff raises a single argument on appeal. Plaintiff argues that the ALJ failed to provide a narrative analysis connecting the evidence regarding Plaintiff's mental limitations to her conclusion that Plaintiff could "maintain pace for simple nonproduction tasks (no assembly line work or work requiring meeting strict quotas or work where coworkers are side by side and the work of one affects the work of others)." ECF No. 12, at 9 (quoting ECF No. 8-3, at 23).

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The United States Court of Appeals for the Fourth Circuit has held that an ALJ must perform a function-by-function assessment evaluating "a claimant's ability to perform the physical functions listed in [the regulations]," including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions [that] may reduce [a claimant's] ability to do past work and other work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). This requirement also applies to an assessment of a Plaintiff's mental limitations. *See Talmo v. Comm'r, Soc. Sec.*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) ("once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."). As outlined in *Dowling*, every conclusion reached when evaluating an RFC should be accompanied by a "a narrative discussion" describing evidence that supports it. 986 F.3d at 387 (citing *Thomas v. Berryhill,* 916 F.3d 307, 311 (4th Cir. 2019)). A proper RFC narrative is composed of: "(1) evidence; (2) [a] logical explanation; and (3) [a] conclusion." *Jeffrey B. v. Saul*, No. GLS-20-1090, 2021 WL 797920, at *2 (D. Md. Mar. 2, 2021) (quoting *Dowling,* 986 F.3d at 388). Through the narrative discussion, an ALJ should "build an accurate and logical bridge from the evidence to [her] conclusion."

*Richard W. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. AAQ-25-02900
August 6, 2026
Page: 4

*Jeffrey B.*, 2021 WL 797920, at *2 (quoting *Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017)).

Plaintiff asserts the RFC assessment at issue here was in error, in part, because the ALJ failed to set forth a narrative discussion explaining how the evidence supported her conclusion that Plaintiff could "maintain pace for simple nonproduction tasks."  ECF No. 12, at 9.  Plaintiff emphasizes that the ALJ used this specific terminology only once in her decision – in the RFC.  *Id.* at 9-10.  According to Plaintiff, the only discussion that could be reasonably tied to this conclusion was the ALJ's assessment of the state agency physician who, as he admits, concluded that Plaintiff "retained the ability to perform simple, repetitive, routine tasks that were not production based."  *Id.* at 10.

Plaintiff's focus on whether the ALJ used the precise language, at issue, when determining the appropriate RFC ignores the other relevant portions of his analysis.  The ALJ began her assessment of Plaintiff's mental limitations by noting that Plaintiff would be limited to "simple tasks in a routine work setting."  ECF No. 8-3, at 27.  Immediately thereafter, the ALJ explained her reasoning, stating that despite negative symptoms, Plaintiff's cognitive functions and memory were intact.  *Id.*  Additionally, his speech was normal, his language skills were intact, he was cooperative and attentive, and, finally, with medication, his symptoms improved.  *Id.*  Once the ALJ had provided her initial rationale for the precise limitation she adopted, the ALJ went on to explain why she did not adopt a more restrictive limitation on pace.  *Id.*  First, the ALJ explained that the nurse practitioner's opinion was, among other things, inconsistent with the overall record of Plaintiff's mental health impairments.  *Id.*  Likewise, the opinion of the psychological consultant, according to the ALJ, was vague and lacked any concrete, functional limitations.  *Id.* Finally, as Plaintiff acknowledges, the ALJ assessed the opinion of the state agency physician who recommended a limitation similar to the one that the ALJ ultimately adopted.  *Id.* at 28.  While this Court may not have reached the same conclusion based on the evidence in the record, the Court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment".  *Craig*, 76 F.3d at 589.  Although the ALJ did not use the precise language in her analysis that she adopted in the RFC, the ALJ's explicit discussion of the impact of Plaintiff's limitations on concentrating, persisting and maintaining pace, and explanation of why Plaintiff would be limited to simple tasks in a routine work setting, constitute a sufficient narrative basis to allow for meaningful review.  *See Britt v. Saul*, 860 Fed.Appx. 256, 262 (4th Cir. 2021) ("Meaningful review is frustrated – and remand necessary – only where we are unable to fathom the [ ] rationale in relation to evidence in the record.") (internal citations and quotation marks omitted).

The ALJ's inclusion of the analysis above distinguishes this case from the cases from this Court on which Plaintiff relies.  *See, e.g.*, ECF No. 12, at 13 (citing *Stacy C. v. Kijakazi*, No. CBD-20-2833, 2022 WL 814292 (D. Md. Mar. 17, 2022)); ECF No. 15, at 3 (citing *Pamela P. v. Kijakazi*, No. 22-354-JMC (D. Md. Nov. 29, 2022)).  In *Pamela P.*, "the ALJ did not describe how

*Richard W. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. AAQ-25-02900
August 6, 2026
Page: 5

he determined the necessity for the pace limitation nor how such limitation related to or accommodated the severe impairments or moderate limitations from which he concluded Plaintiff suffers." *Pamela P.*, ECF No. 15, at 4. Importantly, "at no point in the narrative discussion did the ALJ explain how he concluded that Plaintiff's impairments and associated limitations would be accommodated by the pace limitation." *Id.* Likewise, in *Stacy C.*, "the ALJ never explained which evidence supported her conclusion that Plaintiff could work at a 'production pace'". *Stacy C.*, 2022 WL 814292, at *4. As discussed above, the ALJ here explained the evidence that allowed her to conclude that Plaintiff could perform simple, routine tasks. Once she had concluded such, she went through the evidence that supported more restrictive limitations.

### III. Conclusion

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED. The Court shall affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g) and close this case.

Despite the informal nature of this letter, it is an Order of the Court and should be treated accordingly. An implementing Order follows.

Sincerely,

/s/
Ajmel A. Quereshi
United States Magistrate Judge
